CAMPBELL & WILLIAMS
J. Colby Williams (SBN 5549)
jcw@cwlawlv.com
Philip R. Erwin (SBN 11563)
pre@cwlawlv.com
710 South Seventh Street
Las Vegas, Nevada 89101
Telephone: 702.382.5222

*Attorneys for Defendant*
*AARC, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MELVIN NICHOLAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AARC, LLC d/b/a Advance America and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 2:23-cv-1702<br><br>**NOTICE OF REMOVAL**<br><br>[State Case No. A-23-878058-C]<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453] |

**TO THE CLERK IN THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant AARC, LLC ("Defendant"),[1] hereby removes the above entitled action from Department XIII of the Eighth Judicial District Court of the State of Nevada for Clark County to the United States District Court for the District of Nevada. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. In support of this removal, Defendant states the following:

---

[1] The complaint erroneously alleges AARC does business as "Advance America" but that is incorrect. AARC is the IP holder for Purpose Financial, Inc. formerly known as Advance America, Cash Advance Centers of America, and its various state affiliates, including the entity Plaintiff here sought a loan from, Advance America, Cash Advance Centers of Nevada, Inc. It is this Nevada entity, along with Purpose Financial's various state affiliates, which experienced the data security incident that forms the basis of Plaintiff's allegations in his Complaint.

NOTICE OF REMOVAL                                                                                      CASE NO.: 2:23-CV-1702

## I. PLEADINGS, PROCESS, AND ORDER

1. On September 20, 2023, Plaintiff filed an unverified complaint in the Eighth Judicial District Court, in and for Clark County, Nevada, entitled Melvin Nicholas, individually and on behalf of all others similarly situated, against AARC, LLC, d/b/a Advance America and Does 1 through 10, inclusive, Case No. A-23-878058-C (the "Complaint"). The Complaint alleges four causes of action: (1) negligence; (2) invasion of privacy; (3) breach of contract; and (4) breach of implied contract. *See* Compl. ¶¶ 52-88.

2. Defendant was served with a copy of the Summons and Complaint on September 27, 2023. Plaintiff's Complaint, and all documents accompanying the Complaint are attached hereto as **Exhibit A**.

3. Exhibit A constitutes all the pleadings, process, and orders served upon or by Defendant in the State District Court case.

## II. REMOVAL IS TIMELY

4. This Notice of Removal is filed timely, pursuant to 28 U.S.C. § 1466(b), because it is being filed within thirty (30) days after Defendant was served with process. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. DIVERSITY JURISDICTION EXISTS

**A. The Court has Original Subject Matter Jurisdiction Under CAFA**

5. This lawsuit is a civil action within the meaning of the Acts of Congress regarding removal of class actions. *See* 28 U.S.C. § 1453.

6. This action is brought by a putative representative person on behalf of a proposed class of more than a thousand (1000) individuals. *See* Complaint ¶ 43 ("the Class is comprised of thousands of persons"). Thus, this matter is a "purported class action" as that term is defined pursuant to CAFA.

7. The Complaint could have been filed in this Court under 28 U.S.C. § 1332(d) because this matter is brought as a class action under Nev. R. Civ. P. 23. Compl. ¶ 41. Diversity of citizenship exists between one or more members of the putative class and Defendant. And, accepting only for the purposes of this removal of Plaintiff's allegations, the amount in controversy exceeds, in the

aggregate, $5,000,000, exclusive of interests and costs. Removal is therefore proper pursuant to 28 U.S.C. §§ 1446 and 1453.

**B.     Diversity of Citizenship Exists**

8.     To satisfy CAFA's diversity requirement, the party seeking removal need only show that minimal diversity exists. Meaning, there is at least one putative class member who is a citizen of a state different from that of a defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)). Here, Plaintiff is a citizen of Nevada. Complaint ¶ 11 ("Plaintiff is a resident of Clark County, Nevada"). Defendant, however, is a Delaware corporation headquartered in South Carolina, who is alleged to do business in Nevada. *See* Complaint ¶ 12 ("Defendant is a corporation doing business in Clark County, Nevada."); Declaration of Laura McCutcheon In Support of Defendant's Notice of Removal ¶¶ 3-4 ("McCutcheon Decl."). *See also* 28 U.S.C. § 1332(d)(10). Thus, minimal diversity exists: Defendant is diverse from Plaintiff Nicholas.

**i.     Plaintiffs and Members of the Putative Class Are Citizens of Nevada**

9.     "A person is a citizen of the state in which they are domiciled…." *Charles v. Suri*, 2:21-cv-1712-JCM (NJK), 2022 WL 203366, at *1 (D. Nev. Jan. 24, 2022) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Plaintiff alleges he is a resident of Nevada. Complaint ¶¶ 11, 14. There is no indication that Plaintiff has been a citizen of some other state or intends to reside elsewhere. Plaintiff, therefore is domiciled in Nevada. *See Gilbert v. David*, 235 U.S. 561, 569 (1915) (holding that a person is a citizen of the state in which they have their domicile—a permanent home where they intend to remain or intend to return); *see also Kanter v. Warner Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").

10. Plaintiff seeks a class action based on "all people in the United States" and injunctive relief to this class "as a whole." Complaint ¶¶ 41, 50. Thus, Plaintiff, and the putative class he seeks to represent, are Nevada citizens or in part comprised of Nevada citizens.

### ii. Defendant Is Not a Citizen of Nevada

11. For diversity purposes, a limited liability company is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. *See* 28 U.S.C. § 1332(d)(10).

12. Defendant is now and, at the time this action was field on September 20, 2023, organized and existing under and by virtue of the laws of the State of Delaware. McCutcheon Decl. ¶ 3, Exhibit 1 (Delaware Division of Corporations Registration). At all times relevant to this lawsuit, Defendant has had its headquarters and principal place of business in South Carolina. *Id*. at ¶ 3. The South Carolina headquarters are and, at all times relevant, have been the place where the majority of Defendant's corporate books and records are located. *Id*. at ¶ 4.

13. In addition, Defendant's corporate activities are and, at all times relevant, have been directed, controlled, and coordinated from South Carolina. *Id*. *See generally, Hertz v. Friend*, 559 U.S. 77, 92-93 (2010) (the "principal place of business" for the purposes of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities…in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings"); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 716 (N.D. Cal. 2021) (citizenship as an LLC is determined by its principal place of business for purposes of minimum diversity jurisdiction under CAFA); *see, e.g.*, *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699-700 (4th Cir. 2010) ("[F]or purposes of determining subject matter jurisdiction under [CAFA], a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business."); *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015) ("Under CAFA, suits brought by 'unincorporated

association[s]' are treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by its state of organization and principal place of business, not by the citizenship of its members."); *Azevedo v. Krystle Towers, LLC*, CV-S-05-0493-JCM-PAL, 2005 WL 8162182, at *4 (D. Nev. Nov. 28, 2005) ("Pursuant to CAFA, an unincorporated association is deemed to be a citizen of the state where it has its principal place of business and the state under whose laws it is organized.'").

14. At all relevant times, Defendant has not been incorporated in Nevada and has not had its headquarters, executive offices, or officers based in Nevada. McCutcheon Decl. ¶ 5.

15. Defendant is not now and was not at the time of the filing of the Complaint, a citizen of the State of Nevada within the meaning of the Acts of Congress relating to the removal requirements. Defendant is and has been since this action commenced, a citizen of South Carolina. 28 U.S.C. § 1332(c)(1). Defendant therefore is diverse from Plaintiff Nicholas.

**C. The Proposed Class Size Exceeds CAFA's Requirement**

16. CAFA's requirement that proposed class membership be no less than 100 individuals under 28 U.S.C. § 1332(d)(5) is satisfied here because the putative class has more than 100 members. *See Complaint* ¶ 43 ("the Class is comprised of thousands of persons").

17. Furthermore, Plaintiff seeks to represent all Nevada residents and all people in the United States, whose personal information was obtained by an unauthorized individual or individuals in the Data Breach. Complaint ¶ 41. Defendant, for purposes of removal only, accepts the proposed class size is in excess of 100 members.

**D. The Amount in Controversy is Met**

18. Although, Defendant denies Plaintiff's claims have any merit and disputes Plaintiff and putative class members are entitled to any of the sums sought in the Complaint, Defendant avers, for the purposes of meeting the jurisdictional requirements for removal only, that Plaintiff's allegations put in controversy an amount in excess of $5 million, exclusive of interest and costs. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("In determining the amount [in controversy], we first look to the complaint.").

- 5 -
NOTICE OF REMOVAL                                         CASE NO.: 2:23-CV-1702

19. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we haled that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotation marks and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400 (9th Cir. 2010). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. A defendant may prove the amount in controversy threshold is met with extrinsic evidence. *Dunn v. Endoscopy Center of Southern Nevada*, No. 2:11-cv-00560, 2011 Wl 5509004, at *4 (D. Nev. Nov. 7, 2011).

20. To determine whether the amount in controversy requirement is satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. V. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). The focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo RalphLauren Corp.*, in, 1205 (E.D. Cal. 2008) (citing *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)); *see also Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) *(*recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint).

21. Here, Plaintiff seeks damages (including punitive damages), restitution, attorneys' fees, and injunctive relief. Complaint at pp. 17-18. For the purposes of meeting the jurisdictional requirements of removal only, multiplying even a minimal damages award or restitution award by the thousands of potential individuals in the putative class places in controversy an amount greatly in excess of $5 million.

22. Plaintiff does not allege an amount of damages in his Class Action Complaint. Where a complaint does not set forth an estimate of aggregate damages, the $5,000,000 amount in controversy requirement may be satisfied when it can be reasonably deduced from the allegations that the aggregate amount in controversy could exceed $5,000,000. *See Dart Cherokee*, 574 U.S. at 88-89.

23. Based on the substance and scope of the claims that are asserted and the remedies requested, it can reasonably be deduced that the allegations in the Complaint give rise to an amount in controversy in excess of $5,000,000.

24. Plaintiff seeks to represent "[a]ll people in the United States whose PII…was obtained by an unauthorized individual or individuals from Defendant during the Data Breach." Complaint ¶ 41. Plaintiff does not specify a specific number for the class size he seeks to represent, but alleges "the Class is comprised of thousands of persons." Compl. ¶ 43.

25. Plaintiff seeks damages relating to out-of-pocket costs associated with procuring identity theft protection and restoration services. Compl. ¶ 87. The Complaint is silent as to the time period for which Plaintiff seeks these services.

26. Credit monitoring services through LifeLock cost $19.99 per month for LifeLock Advantage. *See* LifeLock overview of standard, advantage, and ultimate plus credit monitoring and identity theft protection services (last viewed on October 16, 2023), *available at* http://www.lifelock.com/store, a true and correct copy of which is attached hereto as **Exhibit B**. For a two-year period, that totals $479.76 per putative class member and for just a class size of 2,000 individuals (the smallest possible meaning of "thousands"), that totals $959,520.

27. Credit repair services through CreditRepair.com, Inc. cost $119.95 per month. *See* CreditRepair.com, Inc., how credit repair works (last visited on October 16, 2023), *available at*

http://www.creditrepair.com/how-credit-repair-works, a true and correct copy of which is attached hereto as **Exhibit C**. For a two-year period, that totals $2,878.80 per putative class member. For just a class size of 2,000 individuals, that totals $5,757,600.

28. The total for the above services would be $3,358.56 per putative class member, and in excess of $6.7 million if Plaintiff were to prevail in full for a putative class of just 2,000 individuals.

29. Plaintiff additionally seeks damages arising from "anxiety" and "emotional distress" as a result of the data disclosure. Compl. ¶ 87. Plaintiff additionally alleges damages in the form of "the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach." Compl. ¶ 72. Both are categories of recovery recognized under Nevada law in the proper case. *See Farmers Home Mut. Ins. Co. v. Fiscus*, 102 Nev. 371, 374-75 (Nev. 1986) (affirming district court's award of $5,000 in mental distress damages); *Cahow v. Michelas*, 62 Nev. 295 (Nev. 1944) (affirming Eighth Judicial District Court's award of $429 damages for lost wages). Defendant in no way concedes this action is such a proper case, or that there could be a class-wide determination of damages as inherently individualized as Plaintiff's requests for damages for "emotional distress" or "lost time and effort" are. Yet, Plaintiff does seek these damages that only add to the potential recovery of any certified class. Thus, the amount in controversy for jurisdictional purposes is further pushed beyond the $5 million threshold with these additional theories of recovery included.

30. Plaintiff also seeks injunctive relief directing Defendant to institute security protocols and to submit to periodic compliance audits by a third party regarding the security of personal information. Compl. ¶ 87. The injunctive relief sought by Plaintiff adds more to the amount in controversy.

31. Plaintiff additionally seeks "costs and attorneys' fees." Compl. ¶ 87. Under Ninth Circuit precedent, the benchmark commonly used for the award of attorneys' fees is 25% of the recovery. *See In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *Gonzalez-Tzita v. City of Los Angeles,* 2020 WL 11025945 (C.D. Cal. Aug. 25, 2020).

32. Defendant denies that any attorneys' fees are owed to Plaintiff or the putative class. Defendant reserves the right to contest the application of a 25% benchmark in this case. However, for the purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegations that

- 8 -

attorneys' fees are owed. Applying the 25% benchmark to the allegations in the Complaint, Plaintiff's request for "costs and attorneys' fees" places at least an additional $1.6 million in controversy. This is before the costs of any injunctive relief, Plaintiff's requests for damages related to "emotional distress" and "lost time and effort", or punitive damages are even calculated and added to the already provided for amounts here.

33. Defendant reserves the right to show that Plaintiff's other claims and damage theories also place more than $5 million in controversy, should Plaintiff challenge this removal requirement in a motion to remand.

34. For the foregoing reasons, this action meets the jurisdictional minimum amount in controversy. *See Ibarra v. Manheim Invs., Ins.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("'[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions.") (quoting *Dart Cherokee*, 574 U.S. at 89); *Arias*, 936 F.3d at 922 ("[T]he defendant's showing on the amount in controversy may rely on reasonable assumptions."); *see also Lewis*, 627 F.3d at 401 ("[O]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million … then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

35. Accordingly, while Defendant does not concede that a class can be certified in this matter, or that Plaintiff or members of the proposed class are entitled to the damages Plaintiff seeks, the mattery in controversy exceeds the sum or value of $5,000,000 based on the allegations of the Complaint.

## IV. CONCLUSION

36. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

    (a) This is a civil action that is a class action within the meaning of § 1332(d)(1)(B);

    (b) This action involves a putative class of more than 100 persons as required by § 1332(d)(5)(B);

(c) The amount in controversy exceeds $5 million, exclusive of interests and costs as required by § 1332(d)(2); and

(d) Members of the putative class are citizens of a state different from defendant as required by § 1332(d)(2)(A).

37. Accordingly, removal of this action is proper under 28 U.S.C. §§ 1441, 1446, and 1453.

38. The United States District Court for District of Nevada is the appropriate venue for removal pursuant to 28 U.S.C. § 1441(a) because it embraces the place where Plaintiff originally filed the case, in Clark County, Nevada. *See* 28 U.S.C. § 84(c); 28 U.S.C. § 1441(a).

39. In accordance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served on Defendant are attached hereto and filed concurrently herewith. Upon filing the Notice of Removal, Defendant will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Eighth Judicial District Court for Clark County, Nevada, pursuant to 28 U.S.C. § 1446(d).

40. WHEREFORE, Defendant hereby removes to the Court the above action pending against it in the Eighth Judicial District Court for Clark County, Nevada.

Dated: October 19, 2023            CAMPBELL & WILIAMS

/s/ ***J. Colby Williams***
J. COLBY WILLIAMS, ESQ. (SBN 5549)
PHILIP R. ERWIN, ESQ. (SBN 11563)
710 South Seventh Street
Las Vegas, Nevada 89101

*Attorneys for AARC, LLC*

# CERTIFICATE OF SERVICE

I, hereby certify that on the 19th day of October, 2023, I caused a true and correct copy of the foregoing **Notice of Removal** to be served via first class mail, postage prepaid, and by email to the following:

Michael Kind (SBN 13903)
**Kind Law**
8660 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
mk@kindlaw.com

*Attorney for Plaintiff Melvin Nicholas*

Executed on October 19, 2023.

                                  */s/ John Y. Chong*
                                  An employee of Campbell & Williams

# INDEX

| Exhibit No. | Document | Bates Designation |
|---|---|---|
| N/A | Declaration Of Laura McCutcheon In Support Of Defendant's Notice Of Removal | 1-2 |
| Exhibit 1 to Declaration | Delaware Business Entity Information for AARC, LLC | 3 |
| A | Melvin Nicholas v. AARC, LLC State Court Summons and Complaint | 4-24 |
| B | LifeLock Cost Sheet Re: Prices and Enrollment | 25-27 |
| C | CreditRepair Pricing Sheet | 28-31 |